WILLIAM PATTEN & *ux. versus* SAMUEL H. FULLERTON.

Where an attorney, being a practising attorney at law, in the transaction of business, takes a negotiable note to his principal, and it is suffered to remain in the possession of the attorney for many years, the law presumes, that he is entrusted with authority to receive payment of it.

And if the consideration of the note to the principal was property sold, belonging to an infant to whom he was guardian, the power of the attorney to receive payment of the note would not be changed, when the principal ceased to be guardian.

And were the principal, an unmarried female at the time the note was made, and she is afterwards married, the authority of her attorney to receive the money on the note would thereby be revoked, unless such authority were continued with the assent of the husband. With such assent the authority of the attorney would remain unchanged.

Payment, made before a note has become payable, to the duly authorized agent of the holder, has the same effect, as if made to the holder personally.

As a general position, payments made on such note to the attorney in specific articles instead of money, would not be a good payment, and binding upon the principal. But if one of several payments in specific articles to the attorney, be received by the principal, and the note is still suffered to remain in the possession of the attorney, and no objection is made either to the attorney or to the debtor, such payments would go in discharge of the note in the same way, as if they had been made in money.

This case came before the Court upon the following exceptions to the ruling of Whitman C. J. presiding at the trial.

Assumpsit on a note of hand of which the following is a copy:—

" $1455. " Bath, Nov. 25, 1834.

" For value received I promise Eliza S. Smith, to pay her or order fourteen hundred and fifty-five dollars in four years from date, with interest semi-annually from the second day of October last. " S. H. Fullerton."

" Witness, Henry Tallman."

The general issue was pleaded, with a written offer by the defendant to be defaulted for the sum of $924. The offer was not accepted, and the cause went to the jury on the issue. The writ was dated May 5, 1846.

The plaintiff, to prove the issue on his part, offered the note in evidence. The following writings were on the back of said note.

" Received the interest on the within to Nov. 25, 1835." " Nov. 25, 1835. Received on the within, four hundred eighty-seven dollars and thirty cents." " Received interest on the within to Nov. 26, 1836." " Nov. 25, 1836. Received on the within, sixty-seven dollars and seventy cents." " Nov. 27, 1838. Fifty dollars received on the within." " This note good for seven hundred and seven dollars and sixty-eight cents, Sept. 4, 1841, and no more."

It was proved and admitted, that the body of the note and all the indorsements were in the handwriting of Henry Tallman.

The plaintiffs, with a view to show that the indorsements and writings were made without authority, and ought not to be deducted from said note, then offered to prove, and it was

proved, and admitted, that the wife of William Patten, one of the plaintiffs, was the wife of Horatio Smith, who died in 1833, leaving real and personal estate, and three children, Ellen T. C. Smith, William H. Smith and Eliza S. Smith, all minors under the age of fourteen. That the said Eliza S. Patten, on the 19th of August, 1834, then the widow of said Horatio Smith, was duly appointed the guardian of said minor children, and gave bond as the law required.

On the first of Nov. 1833, Henry Tallman was appointed administrator on the estate of said Horatio Smith.

On the petition of said guardian, at a probate court, held Aug. 19, 1834, she was duly authorized to sell the real estate of her wards, described in her said petition.

The plaintiffs also offered a copy of the bond required by law.

Pursuant to said license of Court, the said guardian sold the land on the 19th of Aug. 1834, described in the deed, from said Eliza S. Smith, now Eliza S. Patten, to the defendant, of that date. They also offered in evidence the mortgage deed from the defendant to the said Eliza S. Smith, now one of the plaintiffs, dated Nov. 25, 1834, and recorded Dec. 9, 1834.

It was proved and admitted, that the said Eliza S. Smith, the guardian and mother of said minors, one of the plaintiffs, was married to the said William Patten on the 8th of Sept. 1835. The note declared on and the mortgage given to secure the same, were made as the consideration for the sale of said land to the defendant.

In transacting the business, and making sale of said land to the defendant, and taking the security, Henry Tallman acted as attorney for said guardian, and was the person who drew the deeds and wrote the note declared on.

It was proved and admitted, that Benjamin F. Tallman is the guardian of one of said minors, W. H. Smith, and that Ellen T. C. Smith is now the wife of W. H. Sturtevant, and that the present suit is brought for the benefit of said children, heirs of Horatio Smith. Said B. F. Tallman was appointed guardian Feb. 19, 1845, and said Sturtevant, was appointed guardian of Eliza S. Smith, Jan. 16, 1846. It was proved

and admitted, that the note and mortgage was in the hands of Henry Tallman from the time they were executed, till May first, 1846.

Henry Tallman was called as a witness, by defendant, and though objected to by the plaintiffs on the ground of interest, was admitted and testified, that in transacting the business of the sale of the land under the license of Court to the defendant, he acted as counsel for the guardian, drew the note and deeds, both the deed to the defendant and the mortgage; the note and mortgage were left in his hands as a deposit by the said guardian, where they remained till May, 1846; that all the payments made on said note were made to him; that for one payment he received a yoke of oxen, which he sent to Mrs. Patten; that he credited her for the money received of Fullerton on his book; that he had not taken Mrs. Patten's receipt for any money received of Fullerton, though he believed he had, for a legacy, left her by her father. — He has paid her some money, which is charged on his book. — Have told her I was ready to settle with her, and is ready; — that he never called on Capt. Patten, the plaintiff, to settle, nor has he had any conversation on the subject with him; that as administrator on Horatio Smith's estate he has not paid or settled with her for five hundred dollars, an allowance made to her by the judge from the estate of Horatio Smith; that Capt. Patten, the plaintiff, has never demanded a settlement; — that he never had any written power of attorney from Mrs. Patten; — and had no authority from her to receive payments on said notes, other than from what was derived from his having the notes deposited in his hands, and that a portion of what he received from Fullerton, was paid in lumber, boards and timber for his own use.

Henry Tallman, on the preliminary examination testified, that he had given to the defendant no bond of indemnity, but had promised to save him harmless from the claims against him by reason of the payments made to him on said notes.

On this evidence the plaintiffs' counsel contended, that the fact that the note and mortgage being taken as the consider-

ation for the property of the minors sold to the defendant by license of court, and to be put at interest for their benefit, and left in the hands of said Henry Tallman for safe keeping, he could not have had and did not have any authority to receive payment on said note.

Second. That if he had such authority from Mrs. Smith, while guardian, her marriage with Patten, put an end to her guardianship, and was, by operation of law, a revocation of all authority to Henry Tallman to receive payment on said note from the defendant. And as the said Tallman testified that he had not been authorized by her husband, the plaintiff, that he had no right or authority to receive payments from the defendant on said note, as he did receive them; and that the defendant paid the money to Henry Tallman in his own wrong, and could not operate as payments *pro tanto* of said note.

And that the possession of said note, as a deposit for safe keeping only, could not operate as an authority to Henry Tallman to receive payment on said notes — and especially as to all of said payments which were made by Fullerton and received by Henry Tallman, before the note became payable by the terms of said note, and requested the Judge so to direct the jury.

The Judge directed the jury, that the possession of the note by Henry Tallman was of itself sufficient authority to justify the defendant in paying the money, as he did, to Henry Tallman, and must operate as payment of the note to the amount of the indorsements; and that the possession of the note, under the circumstances, might be regarded by the defendant as evidencing sufficient authority in Henry Tallman to receive the money. And directed the jury, as matter of law, that they might so find.

The jury returned a verdict in conformity to said instruction.

To which ruling, in admitting the said Henry Tallman to testify as a witness, and to which instruction of the Judge to the jury, the plaintiff's counsel excepted.

The arguments were in writing, by

*S.* and *W. P. Fessenden,* for the plaintiffs, — and by

*Groton,* for the defendant.

The points made by the counsel for the plaintiffs are stated in the opinion of the Court. They cited Story on Agency, § 481; Story on Promissory Notes, § 373, 375, 376; Pothier de mandat. n. 103; 8 Wheat. 174; Bayley on Bills, 330; 13 East, 332; Chitty on Bills, 433; 4 B. & Ald. 210: 4 C. & P. 499; 5 Rand. 639; 1 Pick. 347; 5 Pick. 113; 13 Mass. R. 320; 14 S. & R. 307; 1 Desaus. 469; 1 Hill, 484; 1 Porter, 212; 3 Stew. 23.

For the defendant, among other remarks, it was said : —

That although the consideration for this note was real estate of minors, yet the note was to Mrs. Smith, the guardian, and not to the wards. If she had received money, she might have loaned it to the defendant, and have taken the note to herself. The wards are protected by her probate bond. By the statute 1844, c. 117, the note remains her property still, notwithstanding her second marriage.

The testimony in the case was examined, and it was contended that under the circumstances, H. Tallman had authority to receive the payments made upon the note.

If it had been intended, that H. Tallman should no longer remain the agent of Mrs. Smith after her marriage with her present husband, the defendant should have been notified of it, or a payment to the agent would be good. Story on Notes, § 386.

The reception of the oxen was a ratification of the acts of the agent in receiving payment in specific articles instead of money.

The opinion of the Court was drawn up by

SHEPLEY J. — This suit is upon a promissory note, made by the defendant on November 25, 1834, and payable to the female plaintiff, then a *feme sole,* or her order, in four years from date, with interest semi-annually from the second day of October preceding. When it was produced at the trial, there

appeared to be several indorsements made upon it by Henry Tallman, of sums received for interest and in part payment of the principal. The plaintiffs contended, that those indorsements had been made without authority, and that they should not be allowed to diminish the amount, which they would otherwise be entitled to recover.

To establish this position, they introduced testimony, showing that the female plaintiff, as the guardian of her children by a former husband, obtained license, sold and conveyed certain real estate to the defendant for their benefit. And that she received the note now in suit, and payable to herself, and secured by a mortgage of the same estate in payment. The whole business was done by Mr. Tallman, acting as her attorney; and the note and mortgage, as he states, were left by her in his possession as a deposit; where they remained till May, 1846. The payments indorsed were made to him, while they thus remained in his possession, and without any other authority from her. She was married to her present husband on September 8, 1835.

The jury were authorized by the instructions, to find that the payments so made and indorsed, were binding upon the plaintiffs. The counsel for the plaintiffs contend, that the instructions were erroneous; and they insist: —

1. That the note and mortgage were left with Mr. Tallman, as a depositary, without authority to receive payment.

The rights of these parties cannot be determined by the arrangement made by the promisee and her attorney; but they must depend upon the evidence of authority presented to the defendant, authorizing him to make payments to the attorney. Lord Chancellor Cowper, in the case of *Whitlock* v. *Waltham*, 1 Salk. 157, held, that a scrivener, who put out money and was entrusted with the custody of the bond, might receive payment, " for being entrusted with the security itself, it shall be presumed, he is entrusted with a power over it, and with a power to receive the principal and interest." This doctrine is approved and restated in the modern treatises on agency. Story says, in section 104, " So if an agent takes a bond for

his principal and is allowed to retain possession of it, it is presumed, that he possesses an incidental authority to receive the money, which is due on it. And generally the possession of a negotiable instrument is deemed sufficient *prima facie* evidence of the title of the possessor to receive payment of it." The presumption of authority would be much strengthened in this case, because the note and mortgage were allowed to remain in the possession of the attorney for a very long time ; and because it was a part of his known business to collect debts for others.

2. That any authority, which the attorney had before, ceased when she ceased to be the guardian of her children, by the provisions of the statute, c. 51, § 54, by the marriage to her present husband.

The note having been made payable to herself, and not in her capacity as guardian, did not become their property. She would continue to be the legal owner of the note and to have the power to control and collect it, after she ceased to be their guardian. As her own power over it would not be diminished, that of her attorney could not thereby be affected.

3. That the authority of her attorney was revoked by her intermarriage with her present husband. Such would be the effect, if there were not other facts authorizing the inference, that it was continued with the assent of the husband.

He doubtless knew, that his wife had minor children by a former husband ; and he might reasonably be expected to know something respecting the means, by which they were to be supported. Although Mr. Tallman testifies, that there was no conversation between the husband and himself respecting the note, he states, that he received a yoke of oxen of the defendant in part payment of it, which were received by Mrs. Patten, and that he credited to her on his book the money received of the defendant on the notes, and paid some of it to her, and charged it to her on his book. If the husband could be supposed to be ignorant, that Mr. Tallman had such a note in his possession, and that his wife had received of him money paid upon it, it cannot be believed that he could be ignorant,

that his wife had received a yoke of oxen from that source. As his wife would be accountable to her children for the amount of the note, his interest would not be promoted by the collection of it, and he could have no motive to interfere and prevent its being retained and collected by her attorney. This may account for his permitting it to remain in his hands for more than ten years after the marriage. Indeed, he does not even now appear to have interested himself in the matter further than to permit this suit to be brought at the suggestion of the present husband of one, and the guardians of the other children of his wife. Under such circumstances, can he be permitted to deny, that the oxen received by his wife constituted a good payment on that note; and to dispute the authority of the attorney, who received. them for her, and to call upon the defendant to pay their value again, when they became his property as soon, as they were received by his wife? If this be not possible, what is the position of the defendant with respect to the other payments made to the same person? The interest payable on his note before the principal became payable was paid to the person, with whom he had transacted all the business, and in whose possession it continued to remain. No one had disputed that person's authority to receive it, or had called upon him for it. He had delivered him a yoke of oxen in part payment of the principal, and they had been received by the owner or promisee of the note. Would he not under such circumstances be fully authorized to conclude, that he might safely make other payments to the same person so long as he continued to retain the note? And if the cash or other payments towards the principal were made before the oxen were delivered, would not the reception of them by the principal confirm and justify all prior payments made to the same agent? After a lapse of time, from five to ten years, without any objection being made to the validity of the payments, and under such circumstances, a legal presumption arises, that the former attorney of the wife continued to act as such, respecting that note and mortgage, by the consent of the husband. And there is nothing in the case tending to rebut such a presumption.

4. With respect to the payments made, it is contended, that "the defendant would be liable to repay those made before said note became due, said payments having been made immaturely and illegally, and therefore in the defendant's own wrong."

The authorities cited to establish this position show, that if a bill or note be paid before maturity, without being delivered up or canceled, and it be negotiated before maturity; or be paid to an agent, whose authority is revoked before maturity, such payments will not be good, and the person making them may be required to pay them again. Although such payments are not binding upon other parties, yet, as "between the real and *bona fide* holder and the maker, the payment, whenever made and however made, will be a conclusive discharge of the note." Story on Notes, § 384. Payment made before maturity to the duly authorized agent of the holder, has the same effect as if made to the holder.

5. Henry Tallman testified "that a portion of what he received from Fullerton was paid in lumber, boards, and timber, for his own use." What portion, or when such payment was made, does not appear, the amount thus paid and indorsed upon the note, it is insisted, would not be a good payment and binding upon the principal, if received by a duly authorized agent for the collector of the note. This as a general position is doubtless correct. The authorities, however, do not show, that such a payment would not under any circumstances be binding upon the principal, or that it would not under the circumstances presented in this case. The principal within a reasonable time might repudiate such a payment, and require payment to be made again in money. If such payment may be supposed to have been the last payment made in this case, nearly five years would have elapsed, before the defendant could have been informed of any objection made to it. And at that time the plaintiffs making the objection, are presented in this position. They had admitted a former payment made by the defendant to the same attorney in specific articles, to be a good payment, by receiving the property to their own use. To another payment subsequently made to the attorney in spe-

cific articles, after so long a time, they make this objection, and insist, that the defendant shall pay the amount again in money. If the lumber was first delivered, and the oxen at a subsequent time, they would be presented as making such a call upon the defendant, after he had been authorized by the lapse of a longer time, and by a subsequent reception of specific articles in payment, to conclude, that the former one, made in like manner, was satisfactory.

It does not appear, that the defendant was informed that the lumber, any more than the oxen, was received by the attorney to be appropriated to his own use.  If he had received money he might have appropriated it in the same way.  If any person were to bear a loss occasioned by his inability to pay, reason and authority under such circumstances would both decide, that those, who had sanctioned a payment made in specific articles in one instance, and who had also been guilty of such laches in calling upon their agent as well as debtor, should bear it.  Happily for all, no such loss is anticipated in this case.

*Exceptions  overruled.*